**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RENEROSE VASQUEZ,

　　　　　　　　　*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

　　　　　　　　　*Respondent.*

No. 05-73714

Agency No.
A044-808-721

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 6, 2009—San Francisco, California

Filed April 19, 2010

Before: Mary M. Schroeder and Marsha S. Berzon,
Circuit Judges, and Honorable Lyle E. Strom,*
District Judge.

Opinion by Judge Berzon

---

*The Honorable Lyle E. Strom, Senior United States District Judge for
the District of Nebraska, sitting by designation.

## COUNSEL

Jeremiah Johnson, San Francisco, California, for the petitioner.

Peter D. Keisler, Richard M. Evans, and Allen W. Hausman, U.S. Department of Justice, Washington, D.C., for the Attorney General.

## OPINION

BERZON, Circuit Judge:

We consider whether an alien whose legal status as the spouse of a citizen is later terminated because the marriage was fraudulent is eligible for discretionary relief from removal. We conclude that she is. We grant the petition and remand to the Board of Immigration Appeals to determine whether petitioner Renerose Vasquez's application for a fraud waiver should be denied in the exercise of discretion.

## BACKGROUND

Renerose Vasquez[1] (Vasquez) is a 37-year-old native and citizen of the Philippines. She married Wilfredo Vasquez, a U.S. citizen, in the Philippines in January 1994. On February 3, 1995, Vasquez was admitted to the United States as a conditional permanent resident as the wife of a U.S. citizen.

### A.   Statutory Background

We refer to Vasquez as a *conditional* permanent resident because an alien admitted to the United States for permanent residence as a spouse of a U.S. citizen obtains that status only conditionally, pursuant to section 216 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1186a.[2] To remove the con-

---

[1]Petitioner's name appears variously in the record as Rene Rose Vasquez and Renerose Vasquez. We adopt the latter spelling here.

[2]We provide parallel citations to both the INA and the U.S. Code upon the first mention of a statutory section; subsequent citations refer only to the INA.

dition, the alien and her spouse must submit a joint petition to the Attorney General[3] within the 90-day period before the second anniversary of the alien's admission as a permanent resident, stating, among other things, that the marriage was not entered into for immigration purposes. § 216(c)(1), (d)(1), (d)(2). The alien and her spouse must then appear together for an interview. If the Attorney General determines that the facts in the petition are true, including the representation that the marriage was bona fide, the condition is removed and the alien spouse remains a legal resident. § 216(c)(3), (d)(1).

There are three circumstances in which the Attorney General must terminate an alien's conditional permanent resident status: First, if the Attorney General determines, before the second anniversary of admission, that the qualifying marriage is invalid as a basis for permanent resident status because it was entered into for immigration purposes, or has been judicially terminated, or a fee was paid for the filing of the petition for immediate relative status, then the Attorney General "shall terminate the permanent resident status of the alien . . . involved as of the date of the determination." § 216(b)(1). Second, if the alien and her spouse do not file a timely joint petition to remove the conditions on residence or do not appear for the required interview, then the Attorney General "shall terminate the permanent resident status of the alien as of the second anniversary of the alien's lawful admission for permanent residence." § 216(c)(2). Third, if the alien and her spouse file a petition at the proper time and appear for an interview but the Attorney General determines that the qualifying marriage was not "entered into in accordance with the laws of the place where the marriage took place," has been

---

[3]Effective March 1, 2003, the Immigration and Naturalization Service (INS), under the direction of the Attorney General, ceased to exist and its functions were transferred to the Department of Homeland Security (DHS). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). Because Vasquez submitted a joint petition to the INS and had it adjudicated before 2003, we continue to refer to the Attorney General as the relevant decision maker.

judicially terminated, or was "entered into for the purpose of procuring an alien's admission as an immigrant," or a fee was paid for the filing of a petition for immediate relative status, § 216(d)(1)(A), then the Attorney General "shall terminate the permanent resident status of an alien spouse . . . as of the date of the determination." § 216(c)(3)(C).

Section 216(c)(4) allows the Attorney General to remove the conditions on residence for an alien who fails to meet the joint petition requirement. The alien must demonstrate that she meets one of three criteria, one of which is that "extreme hardship" would result if she were removed. § 216(c)(4)(A).[4]

---

[4]In relevant part, § 216(c)(4) provides:

**(4) Hardship waiver**

The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that —

(A) extreme hardship would result if such alien is removed,

(B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), or

(C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault in failing to meet the requirements of paragraph (1).

In determining extreme hardship, the Attorney General shall consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis. In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General. . . .

## B. Factual Background

As required, Vasquez and Wilfredo Vasquez filed a joint petition to remove the conditions on residence and appeared for an interview on May 20, 1998, with the INS. Thenceforward, the case unwound in Byzantine fashion: It took seven years to reach a final agency conclusion, required the filing of several INS forms, triggered four hearings before immigration judges (IJs) reflecting seemingly contradictory arguments by each party, and resulted in seemingly contradictory rulings, by two different IJs.

First, at the INS interview on the joint petition, Wilfredo Vasquez signed an affidavit stating that Vasquez's grandmother promised him $3000 (half of which he accepted, half of which he refused) to marry Vasquez for immigration purposes. Vasquez signed an affidavit stating that she knew she "did wrong" and that her grandmother "pa[id] Wilfredo Vasquez b[ecause] she's trying to help us [because] that's the one way." The INS issued a written notice terminating Vasquez's conditional resident status. The notice recounted Wilfredo Vasquez's admission that the marriage was "entered into for the sole purpose of obtaining immigration benefits," and cited *Matter of McKee*, 17 I. & N. Dec. 332 (BIA 1990), for the proposition that "a marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, has not been recognized as enabling an alien spouse to obtain immigration benefits." It concluded: "Based on the foregoing facts and since the Petition . . . is a joint petition and no longer represents the signature of the United States citizen spouse, the petition may not be approved and therefore must be denied."

The INS then served Vasquez with a Notice to Appear, charging her with removability under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), as an alien inadmissible at the time of admission because she sought to procure admission by fraud. While removal proceedings were pending, Vasquez

filed a second petition to remove the conditions on residence, this time seeking an extreme hardship waiver under § 216(c)(4)(A). After Vasquez appeared before an IJ and denied she had committed marriage fraud, the removal proceedings were continued to await the INS's adjudication of Vasquez's pending application for a waiver.

Vasquez divorced Wilfredo Vasquez on June 2, 2000, and married Frederick Villanueva, a U.S. citizen, on December 8, 2000. Vasquez and Villanueva had a son, Eren Villanueva, on September 10, 1999. Eren has "mild persistent asthma," which has required his hospitalization at least twice. Villanueva filed an immediate relative petition on Vasquez's behalf. To facilitate that petition, Vasquez filed a second request for waiver of the joint petition requirement, this time on the basis that her marriage to Wilfredo had been terminated but was entered into in good faith. Finally, in 2003 Vasquez supplemented her application for an extreme hardship waiver with documentation of hardship to her U.S. citizen husband and child.

## C. Immigration Proceedings

### 1. *Hearing of August 15, 2003*

On December 9, 2002, the INS issued a written notice denying Vasquez's application for an extreme hardship waiver. The notice stated, *inter alia*, that Vasquez was not statutorily eligible to apply for the waiver because she had met the joint petition requirement. Her petition had been denied on its merits, the INS ruled, for marriage fraud.

The removal proceedings were then renewed, and Vasquez appeared before a visiting immigration judge, IJ Smith, on August 15, 2003. Vasquez testified that her marriage to Wilfredo Vasquez was in good faith but she did not move in with him because she was afraid that his ex-wife — her aunt — would be jealous. IJ Smith held that the government had justi-

fied its decision to terminate Vasquez's status by a preponderance of the evidence, because it had shown that "the marriage [to Wilfredo Vasquez] was entered into for the purpose of immigrating to the United States and no other basis." Ruling that no extreme hardship waiver was available because the joint petition had been filed but denied, IJ Smith continued the proceedings so that Vasquez could seek a waiver under § 237(a)(1)(H) (the "fraud waiver"). The fraud waiver provision allows the Attorney General to waive removal for an alien who sought to procure admission by fraud and is the spouse or parent of a U.S. citizen.

### 2. *Hearing of January 28, 2004*

The DHS responded to this suggestion by filing an additional charge of removability against Vasquez on October 24, 2003: It now charged that she was removable not only for fraudulent admission but also, pursuant to § 237(a)(1)(D)(i), as an alien who was lawfully admitted for conditional permanent resident status but whose status was later terminated.

Vasquez appeared before IJ Yam on January 28, 2004. IJ Yam held that the fraud waiver did not apply to the additional charge filed against Vasquez. She therefore pretermitted Vasquez's application for a fraud waiver and, in the alternative, denied the waiver "in the exercise of discretion." Finding Vasquez ineligible for relief, the IJ ordered her removed to the Philippines.

### 3. *BIA Appeal*

Vasquez timely appealed the IJs' orders to the Board of Immigration Appeals (BIA). The BIA addressed both IJ rulings in a single decision, affirming IJ Smith's ruling that Vasquez was ineligible to apply for an extreme hardship waiver, IJ Yam's ruling that the fraud waiver would not cover both grounds of removal, and, in the alternative, IJ Yam's dis-

cretionary waiver denial.[5] Premised on these rulings, the BIA dismissed Vasquez's appeal from the removal order.

## ANALYSIS

Because the BIA conducted a de novo review and issued its own decision, our review is limited to the BIA's decision except to the extent that the BIA expressly adopted the opinions of the IJs. *See Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006). We review questions of law de novo, *see Aguilar Gonzales v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008), and factual findings for substantial evidence, *see Zhao v. Mukasey*, 540 F.3d 1027, 1029 (9th Cir. 2008).

## A.   Extreme Hardship Waiver

We begin our journey through this maze of a case by considering whether, as the BIA determined, Vasquez is ineligible to seek an extreme hardship waiver. We conclude that the BIA's determination on this issue was correct.

**[1]** The opportunity to apply for an extreme hardship waiver is available only to those who "fail[ ] to meet the [joint petition] requirements" to remove the conditions on residence. § 216(c)(4). Vasquez and her U.S. citizen spouse, Wilfredo Vasquez, timely filed a joint petition and appeared together for an interview. The BIA held that Wilfredo Vasquez's admission during the interview that the marriage was for immigration purposes did not result in a withdrawal of the petition. *Compare Matter of Mendes*, 20 I. & N. Dec. 833, 838 (BIA 1994) (holding that where the petitioning spouse signed a written statement expressly withdrawing his signature from the petition, the petition was withdrawn and treated as though it had not been filed). Given the record, we con-

---

[5]As we discuss later, although the BIA seems to have construed IJ Yam's decision as alternatively denying both waivers as a matter of discretion, IJ Yam actually addressed only the fraud waiver.

clude that substantial evidence supports the BIA's determination that the joint petition was denied on the merits under § 216(c)(3)(C), rather than withdrawn.

Although the INS ruling is somewhat confusing, there is no indication in the record that Wilfredo Vasquez withdrew his signature from the petition, as opposed to making statements at the interview indicating that the marriage was fraudulent. The termination notice focused almost exclusively on marriage fraud; the 2002 INS denial of the extreme hardship waiver interpreted the termination as premised on marriage fraud; and the initial Notice to Appear charged Vasquez with removability under § 237(a)(1)(A), for procuring admission into the United States by fraud. Moreover, at the August 15, 2003, hearing before IJ Smith, everyone involved in the case — Vasquez, the government, and the IJ — treated the termination of status as resulting from an adjudication on the merits of the joint petition. After a lengthy hearing, IJ Smith held that the government had carried its burden of proving by a preponderance of the evidence that Vasquez had committed marriage fraud, thus justifying termination of her conditional legal status. Had the petition been withdrawn, the burden of proof would have been on Vasquez to demonstrate that she warranted a waiver under § 216(c)(4). *See Mendes*, 20 I. & N. Dec. at 838.

**[2]** Vasquez argued for the first time in her opening brief before this court that rather than failing to establish the substantive requirements for a successful petition, she had failed to file the joint petition necessary to remove the conditions on residence. But Vasquez and her husband did file a joint petition and appeared for an interview, and, as noted, there is no indication that Wilfredo Vasquez at that interview expressly withdrew his signature from the petition. We therefore cannot disagree with the BIA that Vasquez was terminated for engaging in marriage fraud, not for failing to file a joint petition, and so is ineligible to apply for an extreme hardship waiver under § 216(c)(4).

## B.   Fraud Waiver

### 1.   *Eligibility*

The next question we encounter as we proceed through this labyrinthine case is whether Vasquez is eligible for an entirely different form of immigration relief under § 237(a)(1)(H), available to aliens inadmissible on grounds of fraud.[6] The BIA held that she is not, because the fraud waiver would not eliminate the additional charge the DHS lodged against Vasquez midway in her removal proceedings — that she is removable as an alien lawfully admitted for conditional permanent resident status but whose status was later terminated. § 237(a)(1)(D)(i). In support of its holding, the BIA cited *Matter of Gawaran*, 20 I. & N. Dec. 938 (BIA 1995), *aff'd sub nom. Gawaran v. INS*, 91 F.3d 1332 (9th Cir. 1996). For the following reasons, we hold that our decision in *Gawaran*, although it remains a binding precedent, does not apply to an alien whose conditional permanent resident status was terminated not for failure to file a joint petition but upon a determination of marriage fraud.

---

[6]Vasquez exhausted this issue before the BIA: The parties fully briefed the issue before IJ Yam, and the BIA specifically addressed it. *See Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009) ("Claims addressed on the merits by the BIA are deemed exhausted."). Vasquez raised the issue in her opening brief before this court but did not provide argument supporting her position. Typically, "an issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived." *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996). Nevertheless, we have discretion to review an issue not briefed if it is "purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *United States v. Berger*, 473 F.3d 1080, 1100 n.5 (9th Cir. 2007). Whether Vasquez is eligible for a fraud waiver is a purely legal question and, as noted, was exhausted below. Because the eligibility issue is logically prior to a question that was briefed and that we are thus required to reach — whether the BIA properly denied Vasquez's application for a fraud waiver — we exercise our discretion to reach the eligibility question here.

We begin with a brief discussion of the INA provisions that most directly concern us here, provisions that, unlike the ones discussed previously, apply beyond the marriage context. First, § 212 of the INA, 8 U.S.C. § 1182, describes classes of aliens *ineligible for admission* into the United States. In particular, § 212(a)(6)(C)(i) (the "fraud provision") makes inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States or other benefit provided under this chapter."

Section 237 of the INA describes classes of *deportable* aliens. Two of these categories are relevant here: First, § 237(a)(1)(A) makes deportable "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time." Second, § 237(a)(1)(D) provides in relevant part that "[a]ny alien with permanent resident status on a conditional basis . . . who has had such status terminated . . . is deportable."

**[3]** Finally, § 237(a)(1)(H) (the "fraud waiver") allows the Attorney General to waive "[t]he provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in [the fraud provision]" for any alien who is the spouse, parent, or child of a U.S. citizen or permanent resident and who was "otherwise admissible" at the time of admission.[7] " '[O]therwise admissible' means not exclud-

---

[7]The waiver provision provides in full:

**(H) Waiver authorized for certain misrepresentations**

The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 1182(a)(6)(C)(i) of this title, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D) [participants in Nazi persecution, genocide, or torture]) who —

able on some ground other than the entry fraud." *Corona-Mendez v. Holder*, 593 F.3d 1143, 1146-47 (9th Cir. 2010) (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31-32 (1996)). The effect of the fraud waiver "is to transform an individual who enters the United States with an invalid immigrant visa to the status of one who entered as a nonpreference immigrant, despite the fact that a valid immigrant visa would never have been available to the individual at the time of entry." *Braun v. INS*, 992 F.2d 1016, 1018 (9th Cir. 1993). Enacted "as a humanitarian gesture to preserve families comprised in part of United States citizens or lawful permanent residents," *id.* (citing *INS v. Errico*, 385 U.S. 214, 225 (1966)), the fraud waiver statute does not provide any statutory criteria governing the grant or denial of the waiver.

The question that concerns us here, then, is whether the fraud waiver applies to removal based on the termination of conditional permanent residence, where the reason the alien's status was terminated was that the Attorney General found the qualifying marriage was "entered into for the purpose of procuring an alien's admission as an immigrant." § 216(d)(1)(A).

---

(i)(I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

A waiver of removal for fraud or misrepresentation granted under this subparagraph shall also operate to waive removal based on the grounds of inadmissibility directly resulting from such fraud or misrepresentation.

INA § 241(a)(1)(H), 8 U.S.C. § 1251(a)(1)(H) (1994), *amended by* Pub. L. No. 104-208, §§ 305, 308, 110 Stat. 3009 (1996) (redesignating INA § 241 as § 237 and making other amendments).

**[4]** We note at the outset that the fraud waiver provision does not limit its coverage to the ground of removal contained in subparagraph 237(a)(1)(A) (making deportable aliens who were inadmissible at the time of admission). We so conclude for two reasons:

First, § 237(a)(1)(H) provides that "[t]he *provisions* of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in [the fraud provision] . . . may . . . be waived . . . ." (emphasis added). "[T]his paragraph" refers to § 237(a)(1), which sets out *six* grounds of removal under the heading "Inadmissible at time of entry or of adjustment of status or violates status." If relief under the fraud waiver were limited to subparagraph 237(a)(1)(A) (the only provision that explicitly makes deportable aliens inadmissible at the time of admission), then Congress would not have used the plural form, "provisions," and it likely would have specified the single subparagraph to which it was referring.

**[5]** Second, in addition to referring to "provisions" in the plural, Congress used the words "relating to" — "provisions . . . *relating to* the removal of aliens . . . on the ground that they were inadmissible at the time of admission" on fraud grounds. § 237(a)(1)(H) (emphasis added). "The phrase 'relating to,' as defined by the Supreme Court, means 'to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007) (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992)). Consistently with this definition, we have construed "relating to" language broadly, including in the INA. *See id.* (construing the phrase "relating to . . . sexual abuse" in 18 U.S.C. § 2252A(b)(1)); *Luu-Le v. INS*, 224 F.3d 911, 915-16 (9th Cir. 2000) (interpreting the phrase "relating to a controlled substance" in INA § 241(a)(2)(B)(i)). By its terms, then, the waiver covers not only subparagraph 237(a)(1)(A), which

provides for the removal of aliens on the ground that they were inadmissible at the time of admission, including aliens who sought to procure admission by fraud, but also any other provisions of paragraph 237(a)(1) bearing on or connected to the removal of aliens on that ground.

With that background, the issue we must address becomes more focused: whether removal for termination of an alien's status upon a finding of marriage fraud under subparagraph 237(a)(1)(D) relates to, or bears on, "the removal of aliens . . . on the ground that they were inadmissible at the time of admission as aliens described in [the fraud provision]," as provided by § 237(a)(1)(H).

[6] The BIA did not frame the pivotal question in this manner. Instead, in holding that the fraud waiver was not available to Vasquez, the BIA relied on *Matter of Gawaran* for the broad proposition that "a section 237(a)(1)(H) waiver for inadmissibility due to fraud or misrepresentation is unavailable to waive a separate charge of removability based on the termination of the alien's conditional resident status." The BIA read *Gawaran* too broadly, as that case, properly understood, does not apply to the circumstances of this case, for reasons we now explain.[8]

We begin by looking closely at *Gawaran*. The petitioner in

---

[8]Although unpublished decisions of the BIA are not entitled to deference under *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984), *see Choin v. Mukasey*, 537 F.3d 1116, 1120 (9th Cir. 2008), we give them *Skidmore* deference, "entitling the interpretation 'to a respect proportional to its power to persuade.' " *Id.* (quoting *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006) (applying the deference scheme laid out in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944))). Here, the portion of the BIA decision holding Vasquez ineligible for a fraud waiver consists of a single sentence citing to *Matter of Gawaran*, without addressing the distinctions between this case and *Gawaran*. The BIA's interpretation therefore has little "inherent strength," *Choin*, 537 F.3d at 1120, and we accord it minimal deference.

*Gawaran*, Josefina Gawaran, was married to a citizen of the Philippines. She later married a U.S. citizen but had never divorced her first husband. On the basis of the second, invalid marriage, she entered this country as a conditional permanent resident and soon gave birth to a child. A year after her arrival, her U.S. citizen husband filed to annul their marriage. The INS discovered Gawaran's bigamous marriage and charged her as deportable because "excludable by the law existing at the time of . . . entry," as an individual who entered without a valid immigrant visa or a valid labor certification. 91 F.3d at 1333.

As it turned out, Gawaran also failed to file a joint petition to remove the conditions of residence before the second anniversary of her admission.[9] As a result, the INS terminated her status and lodged an additional charge of deportability against her, stating that she "was deportable as an alien whose conditional permanent resident status was terminated because Gawaran did not file a petition to remove the conditional nature of her permanent resident status before . . . the second anniversary of her admission for permanent residence." *Id.* at 1334.

At the time of Gawaran's case, the fraud waiver, then § 241(f), allowed the Attorney General to waive "[t]he provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation . . . by fraud or misrepresentation," where the alien was the spouse, parent, or child of a U.S. citizen or permanent resident and was "otherwise admissible" at the time of entry. INA § 241(f), 8 U.S.C. § 1251(f) (1988).[10] In a precedential opinion, the BIA consid-

---

[9]Although Gawaran did not apply for a hardship waiver under § 216(c)(4), it appears she would have been eligible for one.

[10]The fraud waiver provision has been amended since we decided *Gawaran*, but its basic structure remains unchanged. In 1996, Congress

ered whether the fraud waiver, if granted, would waive both charges of deportability against Gawaran — that is, not only the charge that she was excludable at the time of entry because she entered with invalid documents but also the charge that she was deportable because her conditional permanent resident status had been terminated. Concluding that it would not, the BIA noted that "the Service did not allege any fraud or misrepresentation in connection with the [termination of status] charge, nor was proof of fraud or misrepresentation required in order to sustain the charge of deportability." *Gawaran*, 20 I. & N. Dec. at 941.

On a petition for review, we agreed with the BIA. We observed that the fraud waiver at that time applied "to aliens who were 'excludable upon entry.' " 91 F.3d at 1334. As the second charge of deportability against Gawaran was based on her failure to file a joint petition before the second anniversary of her admission, we reasoned that the failure to file the petition could not have made Gawaran "excludable upon entry" two years earlier. *Id.* at 1335. We therefore considered termination of status upon failure to file a petition a "separate and independent ground for deportability" to which the fraud waiver did not apply. *Id.* Our holding was grounded in part on *Reid v. INS*, 420 U.S. 619, 623 (1975), in which the Supreme Court held entry without inspection an independent ground of deportability not reached by the (then-nondiscretionary) fraud waiver, because the question whether an alien presented himself for inspection was "quite independent[ ] of whether the alien was excludable at the time of his arrival." 420 U.S. at 623.

Although the language of the pertinent statutory provisions has changed slightly since we decided *Gawaran*, none of

substituted "removal" for "deportation," "inadmissible" for "excludable," and "admission" for "entry." *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, Title III, § 308, 110 Stat. 3009-614.

those changes are material to the issue there decided, so the holding of *Gawaran* remains binding precedent. But this case presents altogether different circumstances from those we confronted in *Gawaran* — the very circumstances, indeed, expressly excepted by the BIA in its *Gawaran* opinion. 20 I. & N. Dec. at 941. Vasquez's conditional permanent resident status was terminated *not* because she failed to file a joint petition but because the Attorney General determined that her marriage to Wilfredo Vasquez — which occurred before Vasquez left the Philippines — was entered into for immigration purposes. Thus, unlike in *Gawaran*, "the Service did . . . allege . . . fraud or misrepresentation in connection with [its termination of Vasquez's status], [and] proof of fraud or misrepresentation [was] required in order to sustain the charge of deportability." *Id.* Also, unlike the Attorney General's determination that Gawaran had failed to file a petition at the proper time, the determination that Vasquez had committed marriage fraud did go directly to the question whether she was admissible at the time of admission: it meant that she was not, by operation of the fraud provision.[11] § 212(a)(6)(C)(i).

_____

[11]The BIA has long held that "[a] marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, [does not] enabl[e] an alien spouse to obtain immigration benefits." *Matter of Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988); *see Matter of Laureano*, 19 I. & N. Dec. 1, 2 (BIA 1983); *Matter of McKee*, 17 I. & N. Dec. 332, 333 (BIA 1980); *see also Lutwak v. United States*, 344 U.S. 604, 611-612 (1953) ("The common understanding of a marriage, which Congress must have had in mind when it made provision for 'alien spouses' in the War Brides Act, is that the two parties have undertaken to establish a life together and assume certain duties and obligations. Such was not the case here . . . . Thus, when one of the aliens stated that he was married, and omitted to explain the true nature of his marital relationship, his statement did, and was intended to, carry with it implications of a state of facts which were not in fact true."); *Johl v. United States*, 370 F.2d 174, 177 (9th Cir. 1966) (following *Lutwak* and upholding an indictment for conspiracy to obtain an immigration document by fraud where the defendant allegedly married solely for the purpose of obtaining permanent resident status).

**[7]** We conclude that in Vasquez's case, and in any other case in which the Attorney General admits an alien into the United States as a conditional permanent resident based on her marriage to a U.S. citizen but later terminates that status upon a finding of marriage fraud, the termination of status ground of removal does "relat[e] to the removal of aliens . . . on the ground that they were inadmissible at the time of admission" as aliens who sought to procure admission by fraud. Both the termination of status and the finding of inadmissibility result from a *single determination* by the Attorney General that the qualifying marriage was entered into for the purpose of obtaining admission as an immigrant. § 237(a)(1)(H). Thus, whenever the Department finds that a conditional permanent resident has committed marriage fraud and charges her with removability on the ground that she was inadmissible at the time of admission as an alien who sought to procure admission by fraud, it will also be able to charge her as removable because her status has been terminated, as it did here. The two grounds are thus essentially coterminous and certainly "relate to" one another.

That Vasquez's status was terminated two years after her admission as a conditional permanent resident does not detract from this conclusion. The reason permanent residence based on marriage is conditional is that the passage of two years provides the INS with additional evidence useful in ascertaining whether the *original admission* was premised on a bona fide marriage. The "central question" in determining whether an alien "entered into her marriage in good faith, and not for the purpose of procuring an immigration benefit, . . . [remains] whether she and [her spouse] intended to establish a life together *at the time they were married*." *Damon v. Ashcroft*, 360 F.3d 1084, 1088 (9th Cir. 2004) (emphasis added); *see Bu Roe v. I.N.S.*, 771 F.2d 1328, 1331 (9th Cir. 1985) ("A marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married."); *see also Mendes*, 20 I. & N. Dec. at 835 (discussing the system of conditional permanent residence established by the Immi-

gration Marriage Fraud Amendments of 1986 (IMFA), Pub. L. No. 99-639, 120 Stat. 3537); *see generally* Vonnell C. Tingle, *Immigration Marriage Fraud Amendments of 1986: Locking In by Locking Out?*, 27 J. FAM. L. 733 (1989) (same). If the Attorney General determines that the actions of the purported married couple during the two-year conditional period demonstrate that the qualifying marriage was never bona fide but was entered into for immigration purposes, then the admission was unlawful and the alien inadmissible *at the time of entry* as an alien who sought to procure admission into the United States by fraud.[12] Put another way, there is, in this instance, only one marriage directly at issue, and it occurred before Vasquez came to this country. If it was "entered into" for immigration purposes, that occurred in the Philippines, and Vasquez only was allowed into the United States because she concealed the true nature of her marriage.

Thus, unlike termination of status upon failure to file a joint petition, termination of status upon a finding of marriage fraud is not "separate and independent" from inadmissibility at the time of admission. *Gawaran*, 91 F.3d at 1335. Instead, it results directly from fraud at the time of admission, precisely the *same* fraud that made the alien inadmissible at the time of admission as charged by the INS. In the language used at the time of *Gawaran*, termination of status upon a finding of marriage fraud means that the alien was "excludable on entry." *Id.*

**[8]** In sum, § 237(a)(1)(D), providing that aliens whose conditional permanent resident status has been terminated are deportable, is a "provision[ ] . . . relating to the removal of

---

[12]We do not consider here cases in which the alien gained admission into the United States on some basis other than marriage but later married and then adjusted her status to that of a conditional permanent resident. We address only Vasquez's situation, in which the basis for admission was the fraudulent marriage, and the Service did — or could have — charged the alien with removability under § 237(a)(1)(A).

aliens . . . on the ground that they were inadmissible at the time of admission" where the termination is premised on fraud. Aliens removed for such a termination are therefore eligible for the fraud waiver provided for in § 237(a)(1)(H).

If the result were otherwise and the fraud waiver did not cover the termination of status ground of removal in this case, then the agency could effectively remove marriage fraud from the category of frauds covered by the waiver. The agency could do so by choosing *always* to charge removability under § 237(a)(1)(D), rather than, or, as here, in addition to, § 237(a)(1)(A), the other available charging section. The Supreme Court and this court have construed the fraud waiver in other circumstances to avoid similar results.

In *Errico*, 385 U.S. at 217, the Supreme Court observed that the fraud waiver "cannot be applied with strict literalness" or it would not accomplish its purpose, because an alien excludable because of fraud or misrepresentation in procuring a visa would necessarily be deportable for other reasons as well (e.g., entering with a defective visa).[13] The Court held that where the agency could have proceeded under former § 212(a)(19) (making excludable an alien who seeks to procure entry by fraud) but chose instead to charge the alien under former § 211(a) for failing to comply with quota requirements, the waiver remained available.[14] *Id.* at 222-23.

---

[13]At that time, the fraud waiver, then § 241(f), provided:

> The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1251(f) (1964).

[14]In *Reid*, the Supreme Court construed *Errico* narrowly and held that the fraud waiver did not apply to grounds of inadmissibility other than the

We considered a similar question in *Cacho v. INS*, 547 F.2d 1057 (9th Cir. 1976) — whether the fraud waiver reached the ground of excludability provided in former § 212(a)(20), making excludable an alien who lacks the documents required under § 211(a). We held that it must: "To hold that [the fraud waiver] forgives the § 212(a)(19) and § 211(a) bases for exclusion but denies forgiveness to that provided by § 212(a)(20) results in giving the Service the power to write [the waiver] off the books by a discriminating choice between available charging sections." *Id.* at 1061.

Following *Errico*, *Reid*, and *Cacho*, Congress has made clear through a series of amendments that the fraud waiver applies to removal based on grounds of inadmissibility directly resulting from the fraud or misrepresentation: First, Congress both (1) excluded particular categories of inadmissibility (regarding labor certifications, visas, and quota restrictions) from the requirement that an alien be "otherwise admissible"; and (2) specified that the fraud waiver operated to waive those grounds of inadmissibility as well. *See* Immigration & Nationality Act Amendments of 1981, Pub. L. No. 97-116, § 8, 95 Stat. 1611, 1616 (1981). Then, in 1990, Congress amended the waiver provision to provide that it covers not just the grounds of inadmissibility specifically excepted from the "otherwise admissible" requirement but also *any* "grounds of inadmissibility at entry directly resulting from such fraud or misrepresentation." Immigration Act of 1990, Pub. L. No. 101-649, § 602, 104 Stat. 4978, 5079 (1990).

These amendments corrected the specific problem we perceived in *Cacho*, but the problem persists in another form: Here, by lodging an additional charge against Vasquez late in her removal proceedings, the DHS attempted to "write [the

---

fraud provision. 420 U.S. at 630. As noted below, however, Congress responded by amending the waiver provision to make clear that the waiver applies to removal based on grounds of inadmissibility directly resulting from the fraud or misrepresentation.

fraud waiver] off the books." *Cacho*, 547 F.2d at 1061. The agency could — and did — initially proceed under § 237(a)(1)(A), charging that Vasquez was inadmissible at entry because of marriage fraud. It denied Vasquez's application for an extreme hardship waiver under § 216(c)(4) because, it said, she *had* filed the joint petition necessary to remove the conditions on residence and was therefore ineligible for a waiver under that section. Then, when IJ Smith continued Vasquez's removal proceedings so that she could apply for the fraud waiver available for removals premised on inadmissibility due to fraud or misrepresentation at entry, the agency lodged the additional charge — *based on exactly the same underlying facts as the earlier charge* — that she was removable because her conditional permanent resident status had been terminated, and argued that Vasquez thereby became ineligible for a fraud waiver under *Gawaran*. The substance of the agency's charge under the inadmissibility and the termination charge was just the same — that Vasquez had been admitted to this country on the basis of marriage, but the marriage was not bona fide. Congress designed the fraud waiver for the humanitarian purpose of forgiving fraud at entry for immigrants with close family ties in the United States. There is no indication it intended the availability of the waiver to be cut off by such charging machinations.

Nor is there any reason to believe that when Congress passed the Immigration Marriage Fraud Amendments of 1986 and instituted the system of conditional permanent residence — including the new ground for removal based on termination of conditional permanent resident status — it intended to make the fraud waiver unavailable to immigrants who committed marriage fraud.[15] There was no need for Congress to create a new waiver for aliens whose joint petitions were

---

[15]In a case involving a sham marriage used to obtain permanent resident status *before* 1986, we held that "it is clear that [the fraud waiver] permits relief from a fraudulent marriage." *Virk v. INS*, 295 F.3d 1055, 1059 (9th Cir. 2002).

denied on the merits because the general fraud waiver, setting forth its own particular requirements, already existed. The hardship waiver provision in section 216 therefore addressed only aliens who failed to file a joint petition, not those who filed a petition and had it adjudicated but denied on fraud grounds. In all likelihood, Congress assumed the existing fraud waiver would continue to apply to marriage fraud, as it applies to all other species of fraud by which admission is gained to the United States. Our analysis of the statutory "relating to" language so indicates, precluding the BIA's conclusion that Congress singled out marriage fraud as the only kind of fraud not fully covered by the fraud waiver.

**[9]** For all these reasons, we conclude that in the circumstances that obtain here — that is, where the basis for termination of conditional permanent residence is that the marriage was not bona fide — the termination of status ground of removal provided in § 237(a)(1)(D) is "relat[ed] to" the removal of aliens on the ground that they were inadmissible at the time of admission as aliens who sought to procure admission by fraud. We reject the BIA's contrary holding, based on an inaccurate reading of *Gawaran*, and hold that Vasquez was eligible for a fraud waiver under § 237(a)(1)(H).

### 2. *Discretionary Denial*

In addition to grounding its ruling on the extension of *Gawaran* we have disapproved, the BIA also affirmed the alternative IJ holding denying Vasquez's application for a fraud waiver as a matter of discretion. Although we do not have jurisdiction to review the discretionary denial of a fraud waiver, we do "have jurisdiction . . . to review the statutory eligibility elements under § 237(a)(1)(H)," *San Pedro v. Ashcroft*, 395 F.3d 1156, 1157-58 (9th Cir. 2005), as we may review "constitutional claims or questions of law." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

IJ Yam, the last IJ who ruled in Vasquez's case, addressed only Vasquez's eligibility for a fraud waiver, not her eligibil-

ity for the extreme hardship waiver available where the joint petition requirement is not met. IJ Smith had already held that Vasquez "does not have the benefit of . . . a hardship waiver" because "a joint petition was filed and it was denied." The only issue before IJ Yam was whether to grant the fraud waiver, as IJ Yam recognized at the outset of her opinion, stating, under the heading "Statutory Eligibility for INA 237(a)(1) Waiver," that "[r]espondent seeks a waiver under Section 237(a)(1)(H)[ ] of the Act," and then quoting that entire section.

Addressing that question, IJ Yam ruled, first, that Vasquez was no longer eligible for the fraud waiver because the INS had added to its charge the termination ground for removal; we have held that ruling erroneous. IJ Yam went on to hold, in the alternative, that she would deny the fraud waiver were Vasquez eligible for it. Nowhere in her opinion does IJ Yam cite to or quote § 216(c)(4), the waiver provision applicable to failure to file a joint petition for removal of conditional status, and, notably, nowhere does she use the term "*extreme* hardship" used in that provision (emphasis added).

IJ Yam's oral decision does evidence confusion about the parameters of the fraud waiver, however, as she refers repeatedly to it — the only waiver before her — as a "hardship waiver."[16] Although there are several statutory eligibility criteria for a fraud waiver — the alien must be the spouse, parent, son, or daughter of a U.S. citizen or permanent resident; must have been in possession of an immigrant visa or the equivalent at the time of admission; and must have been otherwise admissible, with certain exceptions — none requires that an alien show hardship. § 237(a)(1)(H). Although the IJ *may* consider hardship in exercising discretion regarding whether to grant a fraud waiver to an eligible alien, there is no require-

---

[16]The BIA states that IJ Yam said "she would not find extreme hardship." That is incorrect. IJ Yam spoke only of "hardship," not "extreme hardship."

ment that she do so, or that the alien prove that a particular quantum of hardship would result from her removal. *See In re Tijam*, 22 I. & N. Dec. 408, 412-13 (BIA 1998) ("The question whether to exercise discretion favorably necessitates a balancing of an alien's undesirability as a permanent resident with the social and humane considerations present . . . . Favorable considerations may include . . . evidence of hardship to the alien or her family if deportation occurs . . . ."). IJ Yam's conclusion that because Vasquez knew she was in removal proceedings when she married her second husband, she "should not be entitled to any waiver for purposes of subsequent hardship application" suggests she believed, erroneously, that Vasquez was required to demonstrate hardship to receive a fraud waiver.

The BIA's decision only compounded the confusion. It upheld IJ Smith's ruling that Vasquez was ineligible for an extreme hardship waiver to remove the conditions on residence, rejecting IJ Yam's suggestion that Vasquez's joint petition had been withdrawn rather than adjudicated. Then, although only the fraud waiver was before IJ Yam, the BIA held that even if Vasquez had been eligible to seek an extreme hardship waiver, "as noted in the January 28, 2004, decision of the Immigration Judge [IJ Yam's decision], she would not find extreme hardship and she would deny such petition as a matter of discretion." In so stating, the BIA misunderstood which waiver application IJ Yam considered and discretionarily denied; as we have explained, IJ Yam referred to and considered only the fraud waiver, although she misunderstood its requirements. Later, the BIA opinion states, "We are not persuaded . . . that the Immigration Judge abused her discretion in finding that the waivers under section 216(c)(4)(A) [the extreme hardship waiver] *and* 237(a)(1)(H) [the fraud waiver] should be denied." (emphasis added). But — again — there were two IJs; IJ Smith held the extreme hardship waiver inapplicable and did not exercise her discretion, even in the alternative, regarding the extreme hardship waiver of the peti-

tion requirement, and only the fraud waiver was at issue before IJ Yam.

**[10]** In sum, IJ Yam misunderstood the statutory requirements for a fraud waiver, and the BIA did not correct that error. We therefore remand to the agency to apply the correct legal standard in considering, in its discretion, Vasquez's application for a fraud waiver.

## CONCLUSION

The BIA did not err in holding that Vasquez is ineligible to apply for an extreme hardship waiver under § 216(c)(4). Vasquez is eligible to apply for a fraud waiver under § 237(a)(1)(H), as her conditional permanent resident status was terminated upon a finding of marriage fraud. In these circumstances, we conclude that the fraud waiver can waive removal based on the termination of status. Finally, we remand to the BIA to determine, applying the proper legal standard, whether Vasquez's application for a fraud waiver should be denied in the exercise of discretion.

**PETITION GRANTED; REMANDED for further proceedings.**