In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3277

JAMES O. ACQUAAH,

*Petitioner,*

*v.*

JEFFERSON B. SESSIONS III, Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A027-896-308

ARGUED JUNE 7, 2017 — DECIDED NOVEMBER 6, 2017

Before RIPPLE, ROVNER and HAMILTON, *Circuit Judges.*

PER CURIAM. James Acquaah is a sixty-three-year-old man
from Ghana. He originally entered the United States on a vis-
itor's visa and later obtained conditional permanent resident
status based on his marriage to a United States citizen. His
application to remove the conditions on his residency sparked
proceedings that have spanned more than twenty-five years.
While those proceedings awaited a decision by the Board of

Immigration Appeals (the "Board"), his first marriage ended, he remarried and had a daughter, and he sought and received permanent residency under a different name on the basis of that second marriage. The procedural history of this case is complicated, but the issue before us in the present petition is a narrow one: whether, when issuing a final decision in 2015 on Mr. Acquaah's *first* petition to remove the conditions on his residency, the Board erred in determining that Mr. Acquaah was statutorily ineligible for a fraud waiver. We conclude that the Board erred in construing the statutory waiver and therefore remand this case to the Board for proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

In 1981, Mr. Acquaah married Apollonia Sowah in Ghana. While still married to Sowah, Mr. Acquaah was admitted to this country in 1984 on a visitor's visa. In mid-1986, he divorced Sowah, and several months later, he married a United States citizen, Sharon Collins. Collins filed a petition on his behalf, and on the basis of their marriage, he obtained conditional permanent resident status.

In 1990, he and Collins jointly filed a petition to remove the conditions on his permanent resident status (the "Collins petition") and were jointly interviewed on the petition in April 1990. The record is not entirely clear on the point, but he and Collins separated around the same time. A year after the interview, the agency (the former Immigration and Naturalization Service, or "INS") issued its notice of intent to deny

the petition because it concluded that he had failed to show that his marriage was bona fide at its inception. In June 1991, on the basis of that decision, the agency initiated deportation proceedings. It charged Mr. Acquaah as deportable under 8 U.S.C. § 1227(a)(1)(D)(i), as an alien whose conditional status had been terminated "because the marriage which qualified you for status was determined to have been entered into for the sole purpose of procuring your entry as an immigrant."[1]

Approximately one month later, Mr. Acquaah, now separated from Collins, registered a new customary marriage to his first wife, Sowah, in Ghana, using the name "Kofi Obese."[2]

In deportation proceedings, an immigration judge ("IJ") reviewed the agency's charge relating to the denial of the Collins petition. The IJ noted that the statute governing termination of conditional resident status, 8 U.S.C. § 1186a(c)(3)(A), required the INS to issue a decision within 90 days of the interview. When it failed to do so, the conditions on Mr. Acquaah's residence were "removed by operation of law."[3] He was, therefore, a permanent resident, and the IJ terminated proceedings.

The agency appealed from the IJ's 1992 decision to terminate proceedings, and the case languished (inexplicably) with the Board of Immigration Appeals for nearly a decade. During that decade, Sowah immigrated to the United States, ap-

---

[1] A.R. at 658.

[2] At his final hearing before the immigration judge, the petitioner stated that his full name was James Kofi Obese Acquaah. *Id.* at 244.

[3] *Id.* at 636.

parently the beneficiary of a successful diversity lottery application. Mr. Acquaah and Sowah had a child together, Georgene. With no decision from the Board on the Collins petition, Mr. Acquaah applied for and obtained status through Sowah in 1996, using the name under which he had registered their marriage in Ghana, Kofi Obese. He obtained, therefore, a second permanent residence card under this name.

In 2000, the Board finally issued its decision on the Collins petition. It concluded that the agency's failure to adjudicate the petition in a timely fashion was not a basis for the immigration court to terminate deportation proceedings, and the Board therefore remanded the case for further proceedings.

In 2003, Mr. Acquaah and Collins divorced. Back before the IJ, Mr. Acquaah sought a continuance to pursue a new petition to lift the conditional nature of his lawful permanent residence, this time, with a waiver of the joint filing requirement under 8 U.S.C. § 1186a(c)(4)(B), the "good faith waiver." This petition, which would be adjudicated by the agency in the first instance, required him to establish that, although the marriage to Collins had ended in divorce, he had entered it in good faith and not for the purpose of obtaining an immigration benefit. The IJ agreed to close the case administratively while Mr. Acquaah pursued the good faith waiver. For reasons undisclosed by the record, several more years passed, and in 2010 the agency eventually denied this petition.

Because the good faith waiver was denied administratively by the agency, Mr. Acquaah's case was again referred to the IJ for a new hearing. Days before the scheduled hearing on the merits, the agency took Mr. Acquaah's fingerprints in a

routine step to complete a background check. Before the results of the fingerprint analysis became known, Mr. Acquaah appeared for the hearing, and his testimony was selective. He did not mention, for example, that, after separating from Collins, he had remarried Sowah. Nor did he mention that he had a child with Sowah, born in the United States. The IJ accepted his testimony as true and granted his request for a good faith waiver of the joint petition requirement. The IJ noted that the case concerned the intent of the parties to a marriage some twenty years prior and which had lasted only three years, that Mr. Acquaah nevertheless had provided, in 1992 and testimony in 2011, evidence to support the bona fides of his marriage, and that, although the Government was suspicious, it had submitted little contrary evidence. This ruling removed the conditional nature of his lawful permanent resident status as James Acquaah.

The day *after* the IJ granted Mr. Acquaah's permanent residence, his fingerprint results came back to the agency—with two hits: James Acquaah, who had received conditional residence in 1988 and permanent residence in 2011 on the basis of his marriage to Collins, and Kofi Obese, who had received permanent residence in 1996 on the basis of his marriage to Sowah. The Department of Homeland Security ("DHS") therefore launched an investigation, and in 2013, moved to reopen the original deportation proceedings against Mr. Acquaah. DHS asserted that the new evidence established both identity fraud and marriage fraud, i.e., that his marriage to Collins was fraudulent and not in good faith.

The IJ granted the agency's motion to reopen, agreeing that evidence had been uncovered to suggest that there was fraud in the original proceeding with respect to Mr. Acquaah's

identity and his marriage to Collins. Specifically, the IJ ruled
that the Government had submitted evidence in connection
with its motion to reopen that "suggest[ed] that there was
fraud in the respondent's original proceeding, not only with
respect to his identity, but also with respect to whether his
marriage to Sharon Collins was in good faith."[4]

**B.**

In the reopened proceedings, the agency lodged an addi-
tional charge against Mr. Acquaah: that he was deportable as
an alien "who by fraud or willful misrepresentation of a ma-
terial fact sought to procure (or has sought to procure or has
procured) a visa or other documentation or other benefit un-
der the Act." *See* 8 U.S.C. § 1182(a)(6)(C)(i).[5] That charge sup-
plemented the charge in the Order to Show Cause from 1992,

---

[4] *Id.* at 332.

[5] *Id.* at 329. The statute mirrors the language of the charge. The factual
allegations supporting the charge were:

> 7. You have used two separate names in the United
> States—James Acquaah and Kofi Obese.

> 8. You attempted to procure, and did procure, immigra-
> tion benefits under each of these identities.

> 9. You failed to disclose to immigration officials the fact
> that you were attempting to procure immigration benefits
> under the separate identi[t]ies, James Acquaah and
> Kofi Obese.

*Id.* As the IJ noted, because Mr. Acquaah was charged under the
former law, the applicable fraud provision was § 212(a)(19) of the
pre-1996 Immigration and Nationality Act. A.R. at 213.

which alleged that his conditional status was terminated because his marriage to Collins was fraudulent, i.e., entered solely for the purpose of obtaining permanent residency.

In a new hearing, Mr. Acquaah testified before the IJ that, even though he and Collins were not officially divorced until 2003, he had separated from her in 1991. Following that separation, he continued, he reconnected with his ex-wife from Ghana, Sowah, who recently had moved to Chicago. They lived together, and in 1995 Sowah gave birth to their daughter, Georgene. Mr. Acquaah explained that he filed the second application for permanent resident status shortly afterward, in 1996, when Georgene was an infant, because Sowah was dying of sickle-cell disease, and he feared—given that his prior application had been pending for nearly a decade—that his immigration status would not be resolved before she died. He was particularly intent on obtaining permanent resident status before having to become the sole caregiver for Georgene, who had inherited sickle-cell disease from her mother and who also suffers from multiple sclerosis. Sowah eventually died in 2008. Since then, Mr. Acquaah has been caring for Georgene by himself. He has supported her through his work as an accountant and as a pastor at his local church. Georgene corroborated that account in an affidavit, in which she explained that, although she now is a college student, she still relies on her father for help with her medical and financial needs, and that she still returns home almost every weekend. Her medical condition and Sowah's death were also confirmed by additional record documents.

The IJ considered both charges brought by the Government. He first addressed the additional charge added by the Government in the reopened proceedings: identity fraud,

based on Mr. Acquaah's conduct in pursuing status on the basis of his marriage to Sowah. The IJ concluded that this charge was not sustained. While noting that "it is clear that [Mr. Acquaah's] adjustment of status to that of a permanent resident in 1996" on the basis of the marriage to Sowah "was fraudulent,"[6] the IJ nevertheless concluded that the elements of the statutory charge were not satisfied by the Government's proof.[7]

The IJ then turned to the original charge in this reopened proceeding, relating to termination of conditional resident status on the ground that the Collins petition constituted marriage fraud. The IJ first concluded that "the Department of Homeland Security … properly terminated [Mr. Acquaah's] permanent resident status on a conditional basis and removability has been established by evidence which is clear and convincing."[8]

The IJ then considered the applications for relief from removal. The first was a readjudication of the good faith waiver on the Collins petition. Although the IJ had found in favor of Mr. Acquaah on this point in 2011, the IJ concluded that the

---

[6] A.R. at 79.

[7] The IJ's oral opinion on the matter is somewhat opaque. He appears to have concluded that, because of the procedural posture of the case, the identity fraud charge could not be sustained as a technical matter. He noted that the Government could revoke the status it granted to Kofi Obese on the basis of a bigamous marriage without "a decision or order by this Court sustaining the lodged charge of removability." *Id.* at 79 n.3.

[8] *Id.* at 79–80.

additional facts brought to light by the Government's subsequent investigation and Mr. Acquaah's 2015 testimony required a reversal of his prior finding of good faith. The IJ relied on Mr. Acquaah's failure to disclose in his 2011 testimony his remarriage to Sowah and the existence of his daughter to conclude that Mr. Acquaah's marriage to Collins was not bona fide. The IJ concluded that Mr. Acquaah's testimony was not credible and that his documents, unsupported by additional witness testimony, were not "reliable at this point."[9]

He then turned to the alternate application for relief, a fraud waiver under 8 U.S.C. § 1227(a)(1)(H). The IJ agreed with the Government that Mr. Acquaah was statutorily ineligible for the waiver. With no other applications for relief before him and none apparently available, the IJ ordered Mr. Acquaah removed. The IJ added that he was "not unsympathetic" to Mr. Acquaah's situation, but that the immigration court was "not a court of equity" and that he did "not have humanitarian authority to stay [Mr. Acquaah's] removal."[10]

The Board of Immigration Appeals upheld the IJ's decision and dismissed Mr. Acquaah's appeal. Mr. Acquaah, the Board pointed out, did not dispute that he had failed to inform the IJ that, while living in the United States, he was married to two women at the same time, that he had a child born in this country, that he previously had been granted permanent resident status, and that he had provided false information (name and birthdate) on a previously filed adjustment appli-

[9] *Id.*at 253.

[10] *Id.* at 72–73.

cation. The Board also concluded that Mr. Acquaah was stat-
utorily ineligible for the fraud waiver under 8 U.S.C.
§ 1227(a)(1)(H).

## II

## DISCUSSION

The Board issued its own decision rather than merely
adopting the IJ's decision. Therefore, we review the Board's
order directly and can uphold that order only on a basis that
the Board has articulated. *See Ni v. Holder*, 635 F.3d 1014, 1018
(7th Cir. 2011); *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir.
2007).

The issue before the court in the present petition for re-
view is whether the Board erred in determining that Mr. Ac-
quaah was statutorily ineligible for the fraud waiver under 8
U.S.C. § 1227(a)(1)(H). We therefore begin with the statutory
language of § 1227, concerning "deportable aliens," which is
at the heart of this petition:

> **(a) Classes of deportable aliens**
>
> …
>
> **(1) Inadmissible at time of entry or of
> adjustment of status or violates sta-
> tus**
>
> … .
>
> **(H) Waiver authorized for certain
> misrepresentations**
>
> > The provisions of this paragraph
> > relating to the removal of aliens

within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 1182(a)(6)(C)(i) of this title, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)) who—

(i)(I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission … .

… .

A waiver of removal for fraud or misrepresentation granted under this subparagraph shall also operate to waive removal based on the grounds of inadmissibility directly resulting from such fraud or misrepresentation.

8 U.S.C. § 1227(a).

Mr. Acquaah argued to the IJ and again to the Board that he was eligible for the fraud waiver in § 1227(a)(1)(H) and that he merited a favorable exercise of discretion.

The IJ, as noted above, determined that Mr. Acquaah was deportable on one ground: that the Government had "properly terminated" his conditional resident status in connection with the Collins petition.[11] After denying the good faith waiver on the merits, the IJ turned to the fraud waiver. The IJ noted that the matter was before him in reopened *deportation* proceedings originally initiated prior to 1996, and a prior version of the waiver statute governed the proceedings.[12] Under that prior version, the waiver only operated to waive fraud or misrepresentation at "entry,"[13] and Mr. Acquaah's fraud had occurred in 1996 in connection with his applications based on his marriage to Sowah. He therefore declined to adjudicate the merits of the waiver.

Before the Board, the Government adopted the IJ's statutory interpretation: that the relevant fraud, in connection with the Sowah application, did not occur *at entry*. The Board agreed that Mr. Acquaah was statutorily ineligible for the fraud waiver. However, it rested on an altogether different ground. It ruled that, "even assuming" that the timing of the fraud did not bar the application of the waiver "the respondent is not eligible for a section [1227](a)(1)(H) waiver because he was found deportable, not for fraud or misrepresentation,

---

[11] *Id.* at 79.

[12] *See* Illegal Immigration Reform and Immigrant Responsibility Act § 309(c)(1), Pub. L. 104-208, 110 Stat. 3009-546 (1996) (providing that for aliens in proceedings on the date of enactment of the act, the amendments shall not apply).

[13] *See* 8 U.S.C. § 1251(a)(1)(H) (1994) (permitting the waiver for aliens "excludable at the time of entry") (current version at 8 U.S.C. § 1227(a)(1)(H)).

but for having his conditional permanent residence status terminated."[14]

Mr. Acquaah now submits that the Board erred in concluding that he was ineligible for the fraud waiver. He notes that the Board narrowly focused on the specific sustained charge of deportability in his case, the termination of conditional status in relation to the Collins petition. Its approach, he contends, is contrary to the language of the statute, which waives not only a charge *formally based* on fraud, but also any grounds of inadmissibility "directly resulting from such fraud or misrepresentation." 8 U.S.C. § 1227(a)(1)(H).[15] He argues that the statute therefore reaches the termination of his conditional residency; he relies on *Vasquez v. Holder*, 602 F.3d 1003, 1015 (9th Cir. 2010), which adopted this somewhat broader view of the grounds of inadmissibility waivable under 8 U.S.C. § 1227(a)(1)(H).

In response, the Government first contends that Mr. Acquaah failed to exhaust his argument before the Board, noting that he never cited *Vasquez* before the agency. The exhaustion doctrine, however, is an imperfect fit in the present situation. Mr. Acquaah moved for relief from deportation under the waiver and contended that he was statutorily eligible throughout his most recent round of proceedings. In rejecting his request for a fraud waiver, the IJ cited an entirely different

---

[14] A.R. at 3–4.

[15] Mr. Acquaah acknowledges that he has been charged with deportability "on a plethora of statutory bases," among them marriage fraud. Pet'r's Br. 21.

ground—that the prior statute concerned only fraud at "entry." The Government itself, in its argument to the Board, repeated only this particular objection.[16] It was the Board that provided, in the first instance, the alternate reasoning regarding the specific grounds of inadmissibility (fraud, but not termination of status) that we now consider. Our precedents regarding exhaustion have a clear and recognized exception "for issues that are not raised by the parties but instead addressed by the administrative agency itself." *Arobelidze v. Holder*, 653 F.3d 513, 517 (7th Cir. 2011). Such an exception "recognizes that once the Board addresses an issue on its own, the issue is exhausted to the extent it could be, even if it was not raised by the parties." *Id.* (internal quotation marks omitted). We therefore turn to the substance of the statutory question.

First, we place the waiver in its statutory context. Section 1227(a) of Title 8, U.S. Code, identifies classes of deportable aliens, i.e., aliens subject to removal, and paragraph (1) lists categories of aliens who are deportable because they were or

---

[16] The Board did not address the question of entry, and appeared to apply the current version of the statute, noting that "even assuming" the fraud here was committed during an admission, the waiver would not reach the particular grounds on which he was found deportable. A.R. at 3. The Government argues that the Board has yet to consider its argument, accepted by the IJ, that the prior statute applies and that Mr. Acquaah's fraud did not occur in connection with an entry. It appears to us that the Board decided to apply the present version of the statute. The Government does not ask us to reverse the Board on that ground, and we consider it law of the case. Our analysis here focuses, therefore, on the correctness of the Board's subsequent decision on the scope of the waiver as it relates to the termination of conditional residency. Following the Board's lead, and because we have not been asked to do otherwise, we consider the current version of the statute.

are inadmissible at the time of entry or have violated their status. Among those classes are aliens who were excludable or inadmissible at the time of entry or admission, 8 U.S.C. § 1227(a)(1)(A), as well as aliens who had permanent residency on a conditional basis, but whose status was terminated, *id.* § 1227(a)(1)(D).

The language at the center of the parties' dispute authorizes a waiver of certain "provisions" of paragraph (1) "for certain misrepresentations." 8 U.S.C. § 1227(a)(1)(H). We agree with our colleagues in the Ninth Circuit that the use of the plural "provisions" is significant, and indicates a congressional intent to encompass more than a single category listed in § 1227(a)(1). *Vasquez*, 602 F.3d at 1011.

The term "provisions" is not unqualified, however. The waiver applies only to those provisions of § 1227(a)(1) which "relat[e] to the removal of aliens … on the ground that they were inadmissible at the time of admission" because of fraud. The Supreme Court recently has reaffirmed that, absent contrary indications from context, the term "relating to" is "broad and indeterminate." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (internal quotation marks omitted) (narrowing the meaning of the term in a removal statute consistent with a subsequent cross-reference in the statute). The Ninth Circuit has read this language, therefore, as covering *both* § 1227(a)(1)(A), "which provides for the removal of aliens on the ground that they were inadmissible at the time of admission, including aliens who sought to procure admission by fraud," and "also any other provisions of paragraph [1227](a)(1) bearing on or connected to the removal of aliens on that ground." *Vasquez*, 602 F.3d at 1012.

At his final hearing, Mr. Acquaah faced two charges of deportability. The first, lodged by the Government in 1992,[17] charged:

> On June 25, 1991, your status as a permanent resident on a condition[al] basis was terminated under 8 USC 1186(c)(3)(C) because the marriage which qualified you for status was determined to have been entered into for the sole purpose of procuring your entry as an immigrant.[18]

When the Government sought to reopen proceedings upon discovery of his second identity, it lodged a second charge, that he was deportable under

> INA s. 212(a)(6)(C), as an alien who by fraud or willful misrepresentation of a material fact sought to procure (or has sought to procure or has procured) a visa or other documentation or other benefit under the Act.[19]

The IJ found only the first of these charges, relating to the termination of conditional residency, sustained. The question

---

[17] The initial charge by the Government in 1991 was termination of conditional residency for failure to file a joint petition, which was incorrect. The Government amended its charge in 1992 to include marriage fraud.

[18] A.R. at 364.

[19] *Id.* at 329. The IJ subsequently further amended this charge by handwritten note, noting that the correct provision of the INA under the prior law was 212(a)(19). *See id.*

before us is whether that charge is "relat[ed] to," that is, connected with or bearing upon, a charge that the alien was inadmissible at the time of admission by virtue of fraud.

In Mr. Acquaah's case, the Board treated the specific statutory charge that the Government decided to lodge and prove as dispositive of whether the waiver is available. This approach is plainly inconsistent with the statute.[20] The Board should have considered whether the charge sustained against Mr. Acquaah is related to fraud, and we remand to the agency to make that determination in the first instance.

Should the Board determine that the sustained charge is related to a waivable fraud under § 1227(a)(1)(H), it is again for the agency to determine, in the first instance, whether the

---

[20] The Ninth Circuit considered a similar question in *Vasquez v. Holder*, 602 F.3d 1003, 1015 (9th Cir. 2010). It observed that, "when[] the Department finds that a conditional permanent resident has committed marriage fraud and charges her with removability on the ground that she was inadmissible at the time of admission as an alien who sought to procure admission by fraud, it will also be able to charge her as removable because her status has been terminated." *Id.* at 1014. Because the fraudulent conduct provided a common basis for both grounds of removability, the termination of conditional residency was "relat[ed] to" the inadmissibility at the time of entry, and, therefore, the petitioner was eligible for a fraud waiver under § 1227(a)(1)(H). *Id.* at 1017.

In the petition now before us, the Government rests principally on waiver, *see supra* at 14–15, and therefore declines to address *Vasquez* on the merits other than to assert that the decision has "not been adopted by the Circuit." Gov't Br. 18. The Government does refer to one of our unpublished opinions, *Rodas de Linarez v. Holder*, 442 F. App'x 233 (7th Cir. 2011). But in *Rodas*, we merely distinguished its facts from those in *Vasquez*; we took no position on whether *Vasquez* was correctly decided.

substantial equities in Mr. Acquaah's case merit an exercise of favorable discretion. Those equities include, but are not limited to, the severe health issues of his United States citizen daughter, for whom he is the only surviving parent. *See I.N.S. v. Errico*, 385 U.S. 214, 224–25 (1966) (fraud waiver provision was legislated with the "humanitarian purpose of preventing the breaking up of families composed in part at least of American citizens").

Mr. Acquaah also contends that the IJ's decision to readjudicate the bona fides of his marriage to Collins "was a gross miscarriage of justice."[21] Although his brief continues to assert that his marriage to Collins was bona fide, his primary objection is procedural; he claims the IJ did not have the authority to readjudicate the facts of this case on the new evidence submitted by the Government in connection with the motion to reopen. We cannot agree. The regulations not only permit reopening and reconsideration by either party, but are particularly broad when the agency seeks to introduce new evidence of fraud in the initial proceeding. *See* 8 C.F.R. § 1003.23(b)(1) ("In general. An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals."); *id.* (noting that no time limitations apply "to motions by the Service in exclusion or deportation proceedings, when the basis of the motion is fraud in the original proceeding"); *id.* § 1003.23(b)(3) ("Motion to reopen. A motion to reopen proceedings shall state *the new facts* that will be proven at a hearing to be held if the motion is

---

[21] Pet'r's Br. 17.

granted and shall be supported by affidavits and other evidentiary material." (emphasis added)). The express purpose of reopening is to allow the agency to reexamine the issues and reach new conclusions on the basis of new evidence.

**Conclusion**

The Board erred when it treated the absence of a specific fraud charge as dispositive over the availability of a fraud waiver under § 1227(a)(1)(H). It should have considered whether the charge sustained against Mr. Acquaah—termination of conditional resident status on the basis of his marriage to Sharon Collins—was related to fraud. We therefore remand to the Board to address this question, as well as any necessary questions relating to the discretionary grant of such relief.

PETITION FOR REVIEW GRANTED in part

and DENIED in part.