RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SAFIYA TAYO TUKUR SELDON,

                          *Petitioner*,

   *v.*

                     No. 23-3685

MERRICK B. GARLAND, Attorney General,

                          *Respondent*.

On Petition for Review from the Board of Immigration Appeals.
No. A 075 416 740.

Decided and Filed:  October 31, 2024

Before:  MOORE, COLE, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Christine P. Varghese, CHICAGO IMMIGRATION ADVOCATES, Chicago, Illinois, for Petitioner.  Rachel P. Berman-Vaporis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge.  Safiya Tayo Tukur Seldon ("Seldon"), a native of Nigeria, entered the United States in 1992 using her sister's passport and a tourist visa. In 1997, she married a U.S. citizen and obtained conditional permanent resident status.  But two years later, when she petitioned for removal of conditions, the Immigration and Naturalization Service concluded that her marriage was a sham.  And when she was confronted with tough questions by officials, she ended the interview, resulting in termination of her conditional status

and an order of removal from the United States. Fast forward two decades, Safiya Seldon appeared for a removal hearing before an immigration judge ("IJ"), who ordered her removed from the United States. She contested that decision to the Board of Immigration Appeals ("BIA") on the grounds that the IJ failed to inform her of her rights to apply for a waiver of removal and to seek asylum. The BIA dismissed her appeal, and we now DENY her petition for review.

## I. BACKGROUND

### A. Factual Background

Seldon, a native of Nigeria, entered the United States in September 1992, using her sister's passport and tourist visa. Certified Admin. Record ("AR") at 233 (IJ Op. at 5). She traveled to Chicago, Illinois, where she lived and worked as a nursing aide without documentation. *See id.* at 358 (Hr'g Tr. at 93). Over the next five years, Seldon gave birth to three children, all U.S. citizens. *See id.* at 356–57 (Hr'g Tr. at 91–92). In October 1997, she married Charles Seldon ("Charles"), a U.S. citizen, in Detroit, Michigan, and they petitioned the Immigration and National Service ("INS") to accord her permanent resident status based on their marriage. *Id.* at 233–34 (IJ Op. at 5–6). The petition was approved on April 17, 1998, and Seldon was granted permanent resident status on a conditional basis under § 216 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1186a. *See id.* at 717 (INS Termination of Conditional Residence Status at 1).**[1]**

On February 8, 2000, the Seldons filed a joint petition to remove the conditions on her residence, as required under 8 U.S.C. § 1186a(c)(1). *Id.* In the petition, the Seldons indicated that they lived together in Detroit. *Id.* The Seldons were summoned for an interview under oath before an INS officer on April 13, 2001, as mandated by 8 U.S.C. § 1186a(c)(1)(B). *Id.* at 718 (INS Termination of Conditional Residence Status at 2). During separate questioning, the officer identified "numerous discrepancies" between the Seldons' testimony that "raised serious doubts as to the bona fide nature of [their] marital relationship." *Id.* When they were confronted with

---

**[1]**We refer principally to the non-positive law codification of the INA for ease of reference.

some of those inconsistencies, the Seldons refused to answer further questions and ended the interview. *Id.* The INS construed Seldon's "unwillingness to answer questions" as a "failure to appear as required for an interview on [the] petition." *Id.* Because a failure to appear for an interview is a statutory basis to terminate permanent residence, the INS revoked her status as of April 17, 2000. *Id.*

On May 30, 2001, the INS sent Seldon a Notice to Appear for removal proceedings in Detroit. AR at 1133–36 (Notice to Appear). The Notice charged her with four grounds for removal. First, she was a noncitizen whose conditional permanent residence was terminated, pursuant to § 237(a)(1)(D)(i) of the INA, 8 U.S.C. § 1227(a)(1)(D)(i). Second, she had engaged in marriage fraud, pursuant to § 237(a)(1)(G)(ii) of the INA, 8 U.S.C. § 1227(a)(1)(G)(ii). Third, at the time of her adjustment of status to conditional permanent residence, she was inadmissible because she entered the United States by fraud, that is, by assuming her sister's identity, pursuant to § 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i). And fourth, at the time of her entry to the United States in 1992, she lacked a valid visa or entry document, pursuant to § 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182. Seldon did not appear at the April 2, 2002, removal hearing, so the IJ proceeded in her absence. *See id.* at 231 (IJ Op. at 3). The IJ sustained the charges and ordered Seldon removed to Nigeria. *Id.*

For reasons not apparent from the record, Seldon's case languished for nearly a decade, and she was not removed to Nigeria. On February 14, 2011, Seldon moved to reopen the in-absentia removal order, claiming that she never received notice of the prior hearing. *Id.* An IJ in Detroit granted the motion on February 17, 2011. *Id.* Seldon appeared with counsel for a preliminary removal hearing on March 22, 2011. *Id.* At the hearing, Seldon's counsel conceded the first, third, and fourth charges, but denied the second charge of marriage fraud. *Id.* Her counsel informed the IJ that she was seeking cancellation of removal, adjustment of status, and voluntary departure. *Id.* at 231–32 (IJ Op. at 3–4). The case then stalled for another eight years, while Seldon submitted applications to United States Citizenship and Immigration Services ("USCIS") seeking to stop her removal from the United States. *Id.* at 232 (IJ Op. at 4).

On October 19, 2019, Seldon appeared with counsel before an IJ in Detroit for a contested removal hearing. *Id.* By the time of the hearing, Seldon's husband, Charles, had died,

and Seldon's only potentially viable basis for remaining in the United States was an I-130 immediate relative petition filed by her son, which had been approved in May 2019.**²** *Id.* at 232–33 (IJ Op. at 4–5). However, USCIS was in the process of revoking the I-130 petition based on Seldon's marriage fraud, as well as the application's failure to establish Seldon's identity. *Id.* at 233 (IJ Op. at 5), 494–503 (Notice of Intent to Revoke). But, viewing the status of the I-130 petition as a collateral issue, the IJ proceeded with a hearing on the contested charge of marriage fraud. *See id.* at 233 (IJ Op. at 5).

At the hearing, the IJ took evidence concerning Seldon's prior interactions with the immigration system, as well as her current applications seeking an adjustment of status or cancellation of removal. *Id.* at 233–35 (IJ Op. at 5–7)). Seldon testified on her own behalf about the marriage, while the government called one of her sons to contradict her account of living with her now-deceased husband in Detroit. *Id.* at 233–36 (IJ Op. at 5–8); 396–412 (Hr'g Tr. at 131–47).

After the hearing, the IJ rendered an oral decision sustaining the charge of marriage fraud. *Id.* at 240 (IJ Op. at 12). The IJ found Seldon's testimony not credible. *Id.* at 236 (IJ Op. at 8). Specifically, he found it both implausible and unsupported by the record that she married Charles in 1997, moved to Detroit, and left her young children in Chicago. *Id.* He found that her testimony conflicted with that of her son, who stated under oath that she always lived with him. *Id.* at 238 (IJ Op. at 10). He further noted her "history of fraud or deceit with the U.S. immigration system," beginning with her entry to the United States on her sister's passport and including various omissions in her prior immigration-related applications. *Id.* at 239 (IJ Op. at 11).

The IJ considered whether Seldon's fraud could be waived under § 212(i) of the INA, 8 U.S.C. § 1182(i), but concluded she was ineligible because she no longer had a qualifying relative. AR at 241 (IJ Op. at 13). As such, the IJ concluded that she was not eligible for an adjustment of status based on her son's successful I-130 petition. *Id.* He finally stated that there

---

**²**Also pending was an EOIR-42B application for cancellation of removal pursuant to § 240A(b) of the INA, 8 U.S.C. § 1229b(b). However, by the time of the hearing, that petition was no longer viable because Charles was deceased and all of Safiya Seldon's children were older than twenty-one. *See* AR at 306 (Hr'g Tr. at 41).

was "no fear of returning to Nigeria." *Id.* Accordingly, the IJ denied Seldon's applications to remain in the United States and ordered her removal to Nigeria. *Id.* at 242 (IJ Op. at 14).

**B. Procedural Background**

Seldon, now with new counsel, appealed the IJ's decision to the BIA. *See* AR at 3 (BIA Op. at 1). Before the appellate board, Seldon did not challenge the IJ's conclusions that she was removable. *Id.* Nor did she challenge the IJ's denial of her applications for an adjustment of status or cancellation of removal. *Id.* Rather, she raised two procedural challenges. She claimed, first, that the IJ violated department regulations by failing to advise her of her apparent eligibility for a fraud waiver—that is, a waiver of removability under § 237(a)(1)(H) of the INA, 8 U.S.C. § 1227(a)(1)(H). AR at 3 (BIA Op. at 1). Second, she claimed that the IJ violated departmental regulations by failing to inform her of her right to file for asylum and other forms of protection. *See id.* at 4 (BIA Op. at 2). Seldon also moved to remand and attached information related to a potential asylum claim, as well as to the equities in support of her argument for a fraud waiver. *See id.* at 4 (BIA Op. at 2), 50–53 (6/22/21 Aff. of Seldon). She did not challenge her prior counsel's assistance as ineffective. *See id.* at 4 n.2 (BIA Op. at 2).

The BIA rejected all her arguments. As to the first, the BIA held that she was not eligible for a waiver of removal, so the IJ did not violate any obligation to inform her of her potential eligibility for a fraud waiver. *Id.* As to the second, the BIA held that the IJ fulfilled his duty to inform her of the right to apply for asylum or similar relief when he confirmed with her counsel that she did not express fear of returning to Nigeria and would not be filing other applications for relief. *Id.* As to the third, the BIA denied remand because she did not present information that was unavailable during her contested hearing. *Id.*

Seldon timely filed a petition for review, seeking review of the BIA's two procedural decisions, concerning the IJ's failure to inform her of either her eligibility for the waiver or her right to apply for asylum. We have jurisdiction to review questions of law arising from final orders of removal. 8 U.S.C. § 1252(a)(1), (a)(2)(D).

## II.  STANDARD OF REVIEW

Where, as here, "the BIA reviews the [IJ]'s decision and issues a separate opinion, rather than summarily affirming the [IJ]'s decision, we review the BIA's decision as the final agency determination."  *Khalili v. Holder,* 557 F.3d 429, 435 (6th Cir. 2009).  We review the BIA's factual findings under the substantial evidence standard and treat them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)).  We review the BIA's legal conclusions, including questions of statutory interpretation, *de novo*.  *Khalili*, 557 F.3d at 435.  Prior to *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Kisor v. Wilkie*, 588 U.S. 558 (2019), we would give "substantial deference" to the agency's interpretations of the INA and accompanying regulations.  *Khalili*, 557 F.3d at 435.  After *Loper Bright*, "we may look to agency interpretations [of the INA] for guidance, but do not defer to the agency."  *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024).  While the BIA's interpretations are "not controlling," they may still have "power to persuade" based on "the thoroughness evident in [their] consideration, the validity of [their] reasoning, [and their] consistency with earlier and later pronouncements."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Loper Bright*, 144 S. Ct. at 2267.  As to agency regulations, we must thoroughly evaluate an agency's interpretation of an ambiguous regulation before giving any deference.  *Kisor*, 588 U.S. at 574–78.

## III.  FRAUD WAIVER

Seldon contends that the IJ violated department regulations when he failed to advise her of a waiver of removability based on fraud for which she might have applied.  Under 8 C.F.R. § 1240.11(a)(2), a noncitizen in a removal proceeding is entitled to apply to the IJ for a waiver of a ground of inadmissibility if he or she meets the statutory requirements.  The IJ is under an obligation to "inform the [noncitizen] of his or her apparent eligibility to apply" for such a waiver, and to "afford the alien an opportunity to make application during the hearing."  8 C.F.R. § 1240.11(a)(2).  Seldon concedes that the IJ was required to inform her only of a waiver for which she was "apparent[ly] eligib[le]."  Pet. Br. at 9; *see United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (requiring the IJ to inform a noncitizen of an avenue of relief

"where the record, fairly reviewed . . . raises a reasonable possibility that the petitioner may be eligible for relief" (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989))). Accordingly, the only dispute between the parties is whether Seldon was "apparent[ly] eligib[le]" for relief under the fraud waiver—§ 1227(a)(1)(H).

In its decision, the BIA held that the IJ did not violate his duty to inform Seldon because the fraud waiver would not waive removability on two of the charges against her—termination of conditional permanent residence and marriage fraud. AR at 3 (BIA Op. at 1). On appeal, the government has abandoned the argument that the removability waiver does not reach marriage fraud.[3] The government instead defends the BIA's holding on the basis that the waiver does not operate to cure her inadmissibility based on the termination of her conditional permanent residence. Hence, the question before us is whether, in circumstances like Seldon's, the fraud waiver may waive inadmissibility based on a termination of conditional permanent residence.

Before turning to the text of the fraud waiver, it is helpful to place the provision in its statutory context. Section 237 of the INA, codified at 8 U.S.C. § 1227, identifies classes of removable (deportable) noncitizens. Section 1227(a)(1) lists categories of noncitizens who are removable because they were or are inadmissible at the time of admission or adjustment of status or who have violated their status in the United States. Among the classes of removable noncitizens are those who were excludable or inadmissible at the time of entry or admission, 8 U.S.C. § 1227(a)(1)(A), who had permanent residency on a conditional basis, but whose status was terminated, *id.* § 1227(a)(1)(D), and who engaged in marriage fraud, *id.* § 1227(a)(1)(G).

Section 237(a)(1)(H) grants the Attorney General discretion to waive grounds of removability "relating to the removal of [noncitizens] within the United States on the ground that they were inadmissible at the time of admission," 8 U.S.C. § 1227(a)(1)(H), as noncitizens who

---

[3]We note that the Ninth Circuit has suggested that marriage fraud would be waivable under the fraud waiver because it is a ground of removability "relating to the removal of [noncitizens]" based on fraudulent misrepresentations. *See Vasquez v. Holder*, 602 F.3d 1003, 1012–17 (9th Cir. 2010). We have not yet squarely addressed this question. *Al-Saka v. Sessions*, 904 F.3d 427, 432 (6th Cir. 2018); *see also Acquaah v. Sessions*, 874 F.3d 1010, 1017–18 (7th Cir. 2017) (remanding to BIA to consider whether termination of conditional residence due to marriage fraud is waivable). We do not decide that question here either. The government does not contest that Seldon's charges under § 237(a)(1)(A) of the INA, 8 U.S.C. § 1227(a)(1)(A), are waivable. *See Hussam F. v. Sessions*, 897 F.3d 707, 726 (6th Cir. 2018) (holding that fraudulent misrepresentations at the time of admission, as well as misrepresentations during prior admissions, are waivable under § 237(a)(1)(H)).

"by fraud or willfully misrepresenting a material fact . . . sought to procure" an immigration benefit, *id.* § 1182(a)(6)(C)(i). A noncitizen is statutorily eligible for consideration of waiver if he or she

> (I)    is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

> (II)   was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of [title 8] which were a direct result of that fraud or misrepresentation.

*Id.* § 1227(a)(1)(H)(i). A waiver of removal for fraud or misrepresentation under this paragraph "operate[s] to waive removal based on the grounds of inadmissibility directly resulting from such fraud or misrepresentation." *Id.* § 1227(a)(1)(H).

We have not previously considered the extent to which the fraud waiver might cover actions related to the fraud itself. In *Hussam F. v. Sessions*, 897 F.3d 707 (6th Cir. 2018), we determined that the fraud waiver operates to cure prior misrepresentations, not only the misrepresentation at issue in the most recent admission. *Id.* at 725–26. Similarly, in *Avila-Anguiano v. Holder*, 689 F.3d 566 (6th Cir. 2012), we held that two representations may be waived when they each render the noncitizen inadmissible for the purpose of the same admission. *Id.* at 570. The question we face now is different: does the fraud waiver reach any grounds of inadmissibility not formally charged as fraud?

Two of our sister circuits have held that the fraud waiver authorizes waiver of statutory grounds of removability not limited to being inadmissible at the time of entry or admission. *See Acquaah v. Sessions*, 874 F.3d 1010, 1017 (7th Cir. 2017); *Vasquez v. Holder*, 602 F.3d 1003, 1011–12 (9th Cir. 2010). Our sister circuits reasoned that because the statute authorizes the Attorney General to waive "*provisions*" of paragraph (1) for "certain misrepresentations," the text is not limited to waiver of fraud that rendered the noncitizen inadmissible. *See Acquaah*, 874 F.3d at 1017 (quoting § 1227(a)(1)(H)) (emphasis added); *Vasquez*, 602 F.3d at 1011. Rather, they reasoned that § 1227(a)(1)(H) further refers to waiver of provisions "relating to" the removal of noncitizens on grounds of fraud or misrepresentation. Thus, they construed the fraud

waiver's scope as applicable to the preceding paragraphs of § 1227(a)(1) that are "bearing on or connected to the removal of [noncitizens] on that ground." *Acquaah*, 874 F.3d at 1017 (quoting *Vasquez*, 602 F.3d at 1012).

But we need not determine the fraud waiver's scope today. Regardless of whether the Seventh and Ninth Circuits' interpretation of the fraud waiver is correct, Seldon is not entitled to relief. *See Al-Saka v. Sessions*, 904 F.3d 427, 432 (6th Cir. 2018) (not reaching a statutory question because its resolution "would make no difference" to deciding the case).

Even assuming that the fraud waiver applies to § 1227(a)(1)(D), Seldon's constructive failure to attend the interview is not sufficiently related to her fraudulent representations to render her "apparent[ly] eligib[le]" for a fraud waiver. 8 C.F.R. § 1240.11(a)(2).[4] While Seldon's refusal to answer questions came amid an investigation into her alleged fraud, and followed shortly after a series of tough questions from an INS official who conducted the interview concerning the termination of conditions on her permanent status, *see* AR at 1025 (INS Interview Tr. at 75), her conduct is independent from the fraud itself. Ultimately, the INS's conclusion that she failed to appear for the interview followed from its observation that she was not "willing to answer the questions necessary to establish as true the facts and information contained in [her] petition." *Id.* at 718 (INS Termination of Conditional Residence Status at 2). Although the letter terminating Seldon's status discusses her untruthfulness, the final decision appears to rest on her failure to answer questions and thereby to attend the interview. *See id.* Whether Seldon participated in the interview is logically independent of the truth of her statements during that interview or the legitimacy of her marriage. And failure to appear for an interview is an independent ground for terminating conditional permanent resident status, regardless of whether the interviewee's marriage was fraudulent. 8 U.S.C. § 1186a(c)(1)–(2).

In reaching this conclusion, we find persuasive a series of BIA and Court of Appeals opinions holding that failure to file a joint petition, another statutory requirement to remove the conditions of permanent residence, is independent of the marriage fraud and cannot be waived by

---

[4]We note that Seldon has not challenged the INS's conclusion that her refusal to answer questions constituted a failure to appear at the interview.

§ 1227(a)(1)(H). We begin with *In re Bador*, 28 I&N Dec. 638 (BIA 2022), the case on which BIA relied, which concerned a man charged with removability as a conditional permanent resident whose status had been terminated. *Id.* at 639. Like Seldon, the termination of Bador's status followed an investigation into his fraudulent marriage. *Id.* However, the government's legal basis for terminating Bador's status was his failure to file a joint petition to remove the conditions on his residence. *Id.* at 645. As it were, he and his wife *did* file a joint petition, but his wife withdrew her support for the petition after she was confronted by authorities about their suspicions that the marriage was fraudulent. *See id.* The Second Circuit affirmed, holding that a failure to file a joint petition cannot be waived because "failure to file a joint petition in accordance with the statute terminates status regardless whether a[] [noncitizen's] marriage is fraudulent." *Bador v. Garland*, 107 F.4th 75, 81 (2d Cir. 2024). Similarly, here, the failure to attend the interview in accordance with the statute terminates the conditional permanent residence, irrespective of Seldon's fraud, 8 U.S.C. § 1186a(c)(2)(A)(ii), and accordingly is not waivable. *See Gawaran v. I.N.S.*, 91 F.3d 1332, 1335 (9th Cir. 1996) (holding that a failure to petition for removal of conditions within the two-year statutory period is "separate and independent" of fraud that may be waived by the statute).

Seldon relies on the Ninth Circuit's decision in *Vasquez*. However, that case does not support her position. *Vasquez* concerned a noncitizen charged with removability based on marriage fraud, as well as termination of his conditional permanent residence. 602 F.3d at 1008. The Ninth Circuit held that the termination of conditional permanent residence was waivable, because USCIS rested its decision solely on the marriage fraud, such that the two decisions were functionally the same. *Id.* at 1015.[5] Importantly, the court distinguished *Gawaran* based on the independence of the petition-filing requirement. *Id.* Accordingly, the holding of *Vasquez* is that a formally independent charge that rests on fraud is waivable, but a charge that arises independently cannot be so cured. Seldon also cites the Seventh Circuit's decision in *Acquaah*, but that case held only that the BIA must consider whether the termination of conditional status is "related to fraud." 874 F.3d at 1018. The Seventh Circuit did not decide the question under

---

[5]Our conclusion might have been different if the INS's determination that Seldon failed to attend the interview was based on her failure to give truthful answers to the interviewer's questions. But we intimate no answer to that question today.

circumstances like Seldon's.  Hence, these cases do not support Seldon's claim that she is "apparent[ly] eligib[le]" for a fraud waiver.  The IJ did not err by failing to inform her of the right to apply for it.  8 C.F.R. § 1240.11(a)(2).**6**

## IV.  ASYLUM

Seldon next contends that the IJ failed to advise her of her right to apply for asylum and thereby violated department regulations.  Under 8 C.F.R. § 1240.11(c)(1), if a noncitizen "expresses fear of persecution or harm upon return to any of the countries to which the [noncitizen] might be removed . . . the immigration judge shall (i) [a]dvise the [noncitizen] that he or she may apply for asylum in the United States."  8 C.F.R. § 1240.11(c)(1)(i).

We agree with the government that the IJ did not err when he did not inform Seldon of her right to apply for asylum.  Seldon focuses on two sets of statements that she believes should have led the IJ and BIA to conclude that she expressed the relevant fear.  First, Seldon notes that, during the immigration hearing, she testified that she was previously in an abusive relationship with the father of her children, a man who returned to Nigeria in 1999.  AR at 333–34 (Hr'g Tr. at 68–69).  She further testified that when she last saw him in 1999, he said he would "make [her] life miserable because [she] went to marry [Charles]."  *Id.* at 386 (Hr'g Tr. at 121).  Second, Seldon points to her testimony that when she was fourteen years old and living in Nigeria, her sister's husband "would sexually abuse [her]" and she had no recourse within her family, ultimately leading her to leave home.  *Id.* at 337–38 (Hr'g Tr. at 72–73).  Seldon argues that these statements "expresse[d] fear of persecution or harm upon return" to Nigeria, 8 C.F.R. § 1240.11(c)(1), and "made it apparent to the [IJ] that Petitioner suffered torture in the form of rape in Nigeria and that she might have been eligible for additional relief from removal in the form of asylum or withholding of removal."  Pet. Br. at 17.

To the extent her statements indicated a present fear of return, that indication was rebutted by her counsel's lack of objection to the IJ's comments during the hearing.  Toward the end of the hearing, the IJ stated on the record that he had "not heard anything about a fear of

---

**6**We do not reach the government's arguments as to prejudice and futility of remand.  *See* Gov't Br. at 20–23.

returning to Nigeria" in the present proceedings or in prior proceedings before other judges, which he had reviewed. AR at 443 (Hr'g Tr. at 177). He then asked counsel if there were "other applications she's going to file." *Id.* Seldon's counsel, whom she does not contend was ineffective, responded, "None, Your Honor." *Id.* In his oral ruling, the IJ once again noted that "there was no fear of returning to Nigeria." AR at 241 (IJ Op. at 13).**⁷** Seldon's counsel did not object to this statement either. *See* AR at 445 (Hr'g Tr. at 179).

Based on this interchange, it was fair for the BIA to conclude that the IJ did not err when he did not advise Seldon of her options to apply for asylum and related relief. Indeed, when the IJ asked counsel whether he planned to file further applications, including, presumably, an asylum or related application, on her behalf, counsel declined. Once her attorney disclaimed relief, we do not fault the IJ for failing to advise her of it anyways. *See Brown v. Attorney General*, No. 20-3411, 2022 WL 1741892, at *2 (3d Cir. May 31, 2022) (concluding that the IJ was not required to advise petitioner of his right to apply for asylum when counsel informed the judge that he had previously discussed the availability of relief with his client).⁸

### V. CONCLUSION

Accordingly, we **DENY** the petition for review.

---

**⁷**Additionally, during the post-reopening calendar hearing, Seldon's counsel designated Nigeria as her country of removal. *See* AR at 246 (IJ Op. at 3).

**⁸**We need not address the government's arguments as to prejudice on this point, either. *See* Gov't Br. at 27–28.