NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0299n.06

Case No. 24-4082

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2025
KELLY L. STEPHENS, Clerk

RAED ZAKARIYA                                )
                                             )
        Petitioner-Appellant,                )
                                             )
v.                                           )   ON PETITION FOR REVIEW
                                             )   FROM THE UNITED STATES
                                             )   BOARD OF IMMIGRATION
PAMELA BONDI, Attorney General,              )   APPEALS
                                             )
        Respondent-Appellee.                 )
                                             )   OPINION

Before: GILMAN, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge.  Petitioner Raed Zakariya appeals a Board of Immigration Appeals decision denying his motion to reopen his removal proceedings. Because the Board acted within its discretion when it denied his motion, we affirm.

I.

Raed Zakariya is a native and citizen of Iraq. In May 2015, he applied for admission to the United States without a valid entry document. He also filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). But later that year, an immigration judge ordered Zakariya removed to Germany, where he had obtained legal status years before. If Germany didn't accept him, the judge ordered Zakariya removed to his native country of Iraq. *See Zakariya v. Garland*, No. 23-3047, 2024 WL 869660, at \*1 (6th Cir. Feb. 29, 2024).

Because Germany did not accept Zakariya, the government sought to remove him to Iraq in March 2018. *Id.* Zakariya then moved to reopen his 2015 application for withholding of removal and protection under the CAT in front of an immigration judge. Why? He said conditions in Iraq had materially changed since 2015, and he would face persecution in Iraq as a Chaldean Christian. An immigration judge denied his claim in September 2019, and the BIA dismissed his appeal.

While an appeal from that decision was pending in this court, Zakariya in 2023 filed to reopen his proceedings with the Board based on allegedly changed conditions in Iraq since the judge's 2019 adjudication of Zakariya's claim. *Id.* at *2. The Board denied this motion.

Zakariya then sought review of the immigration judge's denial of his 2023 motion to reopen the 2019 decision. This panel upheld the agency's denial of CAT protection and found that conditions hadn't changed enough since the 2019 hearing to justify reopening Zakariya's case. *See id.* at *5.

Following that decision, Zakariya filed another motion to reopen in May 2024. The Board denied it. Zakariya now appeals that decision. He claims a "material worsening of conditions in Iraq" and that Iraqi officials and militias "will persecute and torture him" because he is a Chaldean Christian, lived in and has ties to the United States, has no ties to Iraq, was a refugee, and doesn't have Iraqi identity documents. Appellant Br. at 29. This panel has already rejected Zakariya's arguments once. *Zakariya*, 2024 WL 869660, at *5–6. We now do so again.

II.

A.

We review the Board's denial of a motion to reopen under an abuse-of-discretion standard. *Elgebaly v. Garland*, 109 F.4th 426, 436 (6th Cir. 2024). Normally, the Board abuses its discretion

if its decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (citation omitted). Motions to reopen are generally disfavored. *Id.* Moreover, for untimely motions, an appellant must show "changed circumstances arising in" the location and that "such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Abdulahad v. Garland*, 99 F.4th 275, 284 (6th Cir. 2024). Zakariya's 2024 motion was untimely—that is, it was filed after the ninety-day deadline from the final administrative proceeding (the 2019 hearing) expired. *See* 8 C.F.R. § 1003.2. So, Zakariya must clear this higher bar.

First, Zakariya didn't show a material change in conditions in Iraq since his last hearing before an immigration judge in 2019. Instead, Zakariya put forth evidence that showed the continuation of bad conditions, not a material change in those conditions.

Second, the evidence he presented here is like the evidence he presented in his 2023 motion to reopen—and we have already concluded that the Board did not abuse its discretion in denying his nearly identical motion.

Start with Zakariya's declaration from Dr. Tareq Ramadan. This declaration is "nearly identical" to the one that Zakariya submitted in his 2023 motion to reopen. AR 5. And the first time that this court examined Dr. Ramadan's declaration, we found that it "does not explain . . . how the treatment of Christians in Iraq has *changed* since 2019." *Zakariya*, 2024 WL 869660, at *5 (emphasis in original). Rather, it describes continued issues that Christians have endured since 2014. AR 66; *see also Zakariya*, 2024 WL 869660, at *5. Thus, our previous analysis of these conditions still stands.

Zakariya also cites a State Department report detailing violence, religious persecution, anti-American sentiment, and human-rights abuses. Again, Zakariya cited similar State Department reports the first time around, and we rejected his arguments. *See Zakariya*, 2024 WL 869660, at *4–5. And, as the Board found, these reports describe a "general continuation of conditions in Iraq as they existed in June 2019." AR 5. Zakariya's best cite is a single line from the reports that the "human rights situation worsened" in Iraq during 2023. AR 90. But that general statement doesn't touch on Zakariya's specific characteristics as a Christian or refugee. Nor does it prove that the Board abused its discretion in denying his claim. On the contrary, the Board correctly noted that the conditions detailed in the reports were before the immigration judge at Zakariya's hearing in 2019. *See* AR 529 (immigration judge discussing that "there is some evidence of isolated abuse against Christians"); AR 615–29 (expert witness discussing the "nature or extent of the threat of torture, indefinite detention, violent retribution, or death likely to be faced by Iraqi nationals deported to Iraq from the United States . . . in June 2019"); AR 643–72 (same); AR 1124–38 (same); *see also* AR 5 (Board describing how the reports "describe a general continuation of conditions in Iraq as they existed in June 2019").

Next, Zakariya cites a report by the United States Commission on International Religious Freedom. AR 177–82. But he presented a similar report from this Commission to the immigration judge in 2019. And, the most recent report that he cites states that "Christians' risk of falling victim to mass atrocities has receded since ISIS's territorial defeat in 2019." AR 180.

He also points to a government travel advisory against traveling to Iraq. But he cited a similar advisory in his 2023 motion and, in any event, neither advisory discusses threats to Christians or an escalation of violence.

Zakariya then mentions other instances of violence in Iraq, including rocket attacks on the American embassy, a possible withdrawal of American troops, and the killing of an Iranian general on Iraqi soil. But none of these articles show why the situation in Iraq would be worse than in 2019. Indeed, Zakariya cited the violence in Iraq in his 2019 hearing before the immigration judge. Although we in no way minimize Zakariya's understandable fear about returning to Iraq, the absence of new materials means that the Board did not abuse its discretion in denying his motion to reopen. *See Zakariya*, 2024 WL 869660, at *5–6.

B.

Zakariya's arguments to the contrary don't change the result.

First, he argues that this court may not defer to the Board's decisions after the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). But *Loper Bright* held that courts may not defer to agencies' interpretations of law. *Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024). That case did not affect the standards that courts use to review agency adjudications of fact-bound appeals such as this one. *Cf. Elgebaly*, 109 F.4th at 436.

Zakariya also points to this court's decision in *Abdulahad*. 99 F.4th at 287–88. But that case doesn't help him. There, the court held that the Board abused its discretion, in part, because it arguably assumed that longstanding discrimination against a persecuted group can categorically stop a petitioner from showing changed country conditions. *Id.* But here, the Board didn't apply a per se rule. Instead, it focused on whether conditions had changed since Zakariya's final merits hearing in 2019.

Further, *Abdulahad* held that the Board abused its discretion by failing to determine whether many bases of the petitioner's claim established a particularized risk of torture. *Id.* at 294. But the Board examined all such evidence here. Zakariya also relies on excerpts from

*Abdulahad*'s harmless-error analysis from that panel's discussion of the evidence of abuses against Christians in Iraq. But the Board already considered such evidence and rejected it. That a prior panel considered similar evidence relevant to justify remand is irrelevant to the Board's reasoned rejection of that evidence here.

Finally, Zakariya brings two other legal arguments, but we reject them both. First, he argues that the agency erroneously denied his application for withholding of removal by applying the incorrect legal test. But this court can't address that argument because the denial of his application for withholding isn't before us. Zakariya also failed to exhaust his administrative remedies for any challenge to the agency's denial of withholding of removal because he didn't present such a claim to the Board on appeal. *See Zakariya*, 2024 WL 869660, at *4; *see also* 8 U.S.C. § 1252(d)(1). Second, Zakariya says that this court should remand to allow the agency to address whether the decision below was affected by "secret memos" about its decision-making process. Appellant Br. at 44–47. But this court must "decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Because these memos are outside the record, we can't consider them.

\*        \*        \*

We affirm.